AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: Jason Harley 2/11/25

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

information associated with the cellular devices assigned call number (405) 326-7636 in the custody or control of T-Mobile

Case No. M-25-106 -CMS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ________ District of New Jersey, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841, 846 | Distribution and Possession of CS with Intent to Distribute; Drug Conspiracy |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Marc Jones
*Applicant's signature*

Marc Jones, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 11, 2025

Chris M. Stephens
*Judge's signature*

City and state: Oklahoma City, Oklahoma

Christopher M. Stephens, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBER (405) 326-7636 IN THE CUSTODY OR CONTROL OF T-MOBILE.** | **Case No. M-25 106 -CMS**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Marc Jones, being first duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with call number **(405) 326-7636** ("**Subject Account**")[1], that is in the custody or control of T-Mobile, a wireless communications service provider located at, among other places, 4 Sylvan Way, Parsippany, New Jersey 07054. As a provider of wireless communications service, T-Mobile is a provider of "electronic communications service," as defined in 18 U.S.C. § 2510(15).

---

[1] On December 19, 2024, United States Magistrate Judge Suzanne Mitchell authorized a search warrant for the **Subject Account** (M-24-914-SM). The facts supporting that authorization are largely the same as this request for a renewed search warrant authorization.

2. The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require T-Mobile to disclose to the government the information further described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review the information to locate the items described in Section II of **Attachment B**.

3. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definition of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute, including a certification from an attorney for the government that the information likely to be obtained by the requested pen register and trap-and-trace device is relevant to an ongoing criminal investigation. *See* 18 U.S.C. § 3123(b)(1). That certification is attached as **Attachment C**.

4. In sum, this affidavit is made in support of an application for three distinct items: (1) a pen register and trap-and-trace device on the **Subject Account**, pursuant to 18 U.S.C. § 3121–3127; (2) a "ping" on the **Subject Account**, pursuant to 18 U.S.C. § 2703 and Fed. R. Crim. P. 41(c); and (3) an order for historical and prospective cell site data for the **Subject Account,** pursuant to 18 U.S.C. § 2703(d).

5. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since April 11, 2021. I am currently assigned to the Oklahoma City Division, where I have been involved in a wide variety of investigative matters, including numerous investigations targeting large criminal enterprises, most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846. As part of my investigative experience as an FBI Special Agent, I have executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § § 841 and 846 (Possession with Intent to Distribute, to Distribute, and/or to Manufacture a Controlled Substance and Conspiracy to do the Same) have been and may continue to be committed by Hector **Lujan Pena (LUJAN)**.

Furthermore, there is probable cause to believe that **LUJAN** is utilizing **Subject Account** to do so. There is also probable cause to search the information described in **Attachment A** to determine the extent of **LUJAN's** illegal operations as well as what role other individuals may have as part of **LUJAN's** illegal operations.

8. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. As stated in the previous warrant Affidavit for the **Subject Account**, the investigation into **LUJAN** began in December of 2024. During the collection period authorized by the previous search warrant, a review of the GPS pings on the **Subject Account** showed that LUJAN has travelled twice to rural parts of Oklahoma and once Texas. Further, each time LUJAN travels away from the Oklahoma City area he tows a large enclosed trailer. Additionally, each of these trips involve an early-morning departure and a late-night return, most recently on January 25, 2025.

10. For example, on the morning of December 28, 2024, law enforcement observed **LUJAN** departing his South Goff property while towing a large enclosed trailer. Shortly after that, **LUJAN**'s GPS pings depicted travel to the Mazie, Oklahoma area, returning directly to the property at approximately 12:57 a.m. the following morning. **LUJAN** traveled again two weeks later, this time to the area of Mount Pleasant, Texas.

**LUJAN**'s GPS pings reflected travel to Texas and directly back to the South Goff Avenue property two days later. Most recently, on January 25, 2025, **LUJAN** took another trip to Mazie, Oklahoma, leaving just before 7:00 a.m. and returning again after midnight the following morning.

11. Law enforcement previously received information from a confidential source (CS1)[2], who stated that **LUJAN** claims to receive approximately fifty (50) kilograms of cocaine on a weekly basis directly from Mexico, and he maintains the ability to return the product to Mexico if he is unsatisfied with the quality of it. **LUJAN** then distributes those kilograms of cocaine from his property on South Goff Avenue, as well as other places. Based on my training and experience, this information combined with **LUJAN**'s pattern of behavior suggests that the trips **LUJAN** is taking out of town are trips in which he is picking up large quantities of cocaine, likely storing them in the trailer he brings with him. He is then returning the cocaine to his property at South Goff Ave.

12. Further, through the use of electronic surveillance, law enforcement has observed many of **LUJAN**'s suspected customers at his South Goff Avenue property. These are customers who stay for only a short period of time, often parking on the street and walking to the gate of the property. Sometimes they are met at the gate and return to their vehicle to depart, and other times they are allowed onto the property. Additionally,

---

[2] CS1 provided information to law enforcement voluntarily and was not promised anything in exchange for his/her cooperation. Information provided by CS1 has been reliable to the best of my knowledge.

**LUJAN** has been observed departing his property on South Goff Avenue for short trips, sometimes returning to the property within fifteen minutes.

13. For example, on December 19, 2024, electronic surveillance observed a gold pickup arrive at the South Goff Avenue property and waited in the driveway. A few minutes later, **LUJAN** arrived and unlocked the gate, allowing both his vehicle and the gold pickup to enter the property. The same gold truck exited the property and departed after approximately seven minutes. Another similar interaction occurred on the same day. This time, however, a dark colored Jeep Grand Cherokee arrive at the South Goff Avenue property, pull into its driveway, and waited at the gate. This visit lasted only 10 (ten) minutes before the suspected customer departed, the vehicle never entering the property.

14. Lastly, during the collection period **LUJAN** has been very active using both WhatsApp and traditional calls and texts in his routine communications on the **Subject Account**. **LUJAN** contacts a wide variety of individuals that include area codes in Oklahoma, Texas, New York, and Mexico. A majority of these communications are short – sometimes no more than thirty seconds in length. In my training and experience, communications to establish a time and place to complete a drug transaction are short in nature, and kept that way in order to limit the amount of conversation held over the phone.

15. In my training and experience, I have learned that T-Mobile is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they

provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten (10) or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

16. Based on my training and experience, I know that T-Mobile can collect cell-site data about **Subject Account**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

17. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity

Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

18. Based on my training and experience, I know wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may assist in obtaining further evidence against **LUJAN** as well as any co-conspirators.

19. Based on my training and experience, using the combination of both historical and prospective location information is helpful in locating individuals. The historical location information from cellular phones can help establish a pattern of life, while prospective location information—including cell-site information, phone pings, and timing advance measurements/distance-to-tower measurements—can help provide more

precise real-time information regarding the location of the **Subject Account's** user. To help ensure that **LUJAN** is located, I am requesting precise location information for the next forty-five (45) days for the **Subject Account**.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in **Attachment A** for each communication to or from **Subject Account**, without geographic limit, for a period of forty-five (45) days pursuant to 18 U.S.C. § 3123(c)(1).

21. I further request, pursuant to 18 U.S.C. § 2703(b)(1)(A), that the Court find that the government is not required to provide notice of this warrant to the subscriber, customer, or person who was monitored. I also request, pursuant to 18 U.S.C. § 3123(d), that T-Mobile be ordered not to disclose to the listed customer or any other person the existence and/or use of the pen register and trap-and-trace device sought herein. Additionally, there is reasonable cause to believe that providing immediate notification of the warrant to the subscriber, customer, or person who is being monitored may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber, customer, or user of the **Subject Account** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from

prosecution. *See* 18 U.S.C. § 2705(a)(2). Therefore, I request that the Court order T-Mobile not to notify any other person of the existence of this warrant and order for a period of one year from the date the requested warrant is issued, except that the service provider may disclose this warrant and order to an attorney for the service provider for the purpose of receiving legal advice. As further specified in **Attachment B**, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for a period of one year from the date the requested warrant is issued, or until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents as their premature disclosure may jeopardize this investigation.

Respectfully submitted,

MARC JONES
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to me on 11th of, February, 2025.

CHRISTOPHER M. STEPHENS
United States Magistrate Judge

**ATTACHMENT A**

**Property to Be Searched**

1. The cellular telephone assigned call number **(405) 326-7636** (“**Subject Account**”), whose wireless service provider is T-Mobile (the “Provider”), a wireless communications service provider located at, among other places, 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Records and information associated with **Subject Account** that is within the possession, custody, or control of the Provider.

# ATTACHMENT B

## Particular Things to Be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **Subject Account,** as listed in **Attachment A**:

a. The following information about the customers or subscribers associated with **Subject Account** from December 20, 2024, to the present:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records;

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Subject Account**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communication were sent and received; to include the cell tower roundtrip network measurements from tower to device and back to tower, commonly referred to as Timing Advance data (RTT, PCMD, TrueCall, LOCDBOR, etc.).

b. The following information about the customers or subscribers associated with **Subject Account** for a period of 45 days from the issuance of the warrant, including:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity

Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

c. Prospective information about the location of the cellular phone associated with **Subject Account** for a period of 45 days (during all times of day and night) from the issuance of the warrant, including:

i. E-911 Phase II data;

ii. GPS data to include cell tower sector information;

iii. Latitude-longitude data;

iv. Other precise location information, including engineering data to include but not limited to RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

v. Pen / Trap and Trace device with prospective cell site information or data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Subject Account** during any voice, SMS, and/or data transmission, including but not limited to engineering data which would include RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records.

## II. Information to Be Seized by the Government

All information described above in Section I that would assist and aid in the investigation of violations of 21 U.S.C. §§ 841 and 846.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by T-Mobile in order to locate the things particularly described in this Warrant.